**Clementine COTTON,**
**Plaintiff-Appellant,**

v.

**Otis BOWEN, Secretary of Health and Human Services,\* Defendant-Appellee.**

No. 85–2222.

United States Court of Appeals,
Ninth Circuit.

Submitted July 14, 1986.\*\*

Decided Sept. 18, 1986.

---

\* Otis Bowen is substituted for his predecessor, Margaret M. Heckler, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

\*\* The panel is unanimously of the opinion that oral argument is not required in this case. Fed. R.App.P. 34(a); 9th Cir.R. 3(f).

Robert E. Thomas, Palo Alto, Cal., for plaintiff-appellant.

Gregg A. Frampton, Asst. Regional Atty., San Francisco, Cal., for defendant-appellee.

Before PREGERSON, NELSON and THOMPSON, Circuit Judges.

PER CURIAM.

Clementine Cotton appeals from the district court's judgment affirming the denial by the Secretary of Health and Human Services ("the Secretary") of her applications for disability insurance benefits and supplemental security income benefits. Cotton contends that: (1) the Administrative Law Judge ("ALJ") erred in his consideration of her subjective complaints; (2) substantial evidence does not support the ALJ's decision that she has the residual functional capacity to perform a wide range of light work; (3) the ALJ erred in his consideration of a treating physician's evidence; (4) the ALJ erred in applying the medical-vocational guidelines ("the grids"); and (5) the district court erred by refusing to remand for consideration of new evidence.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We reverse the Secretary's decision and remand for further findings.

## BACKGROUND

Clementine Cotton applied for disability insurance benefits and supplemental security income in June 1982. She claimed to be disabled since October 31, 1981, because of a broken left ankle, gout, and arthritis. Her applications were denied initially and on reconsideration. After a hearing, an ALJ determined that Cotton was not disabled. He found that, although Cotton was unable to perform her past work, she retained the residual functional capacity to perform a wide range of light work. The district court affirmed the Secretary's decision, and Cotton filed a timely appeal.

## DISCUSSION

To qualify for disability benefits, the claimant must establish that a medically determinable physical or mental impairment prevents her from engaging in substantial gainful activity and that the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985); *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.1984). Additionally, the impairment must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3); *Gallant*, 753 F.2d at 1452.

The claimant has the burden of proving that she is disabled. *Swanson v. Secretary of Health & Human Services*, 763 F.2d 1061, 1064 (9th Cir.1985); *Gallant*, 753 F.2d at 1452. The claimant establishes a prima facie case of disability by showing that her impairment prevents her from performing her previous occupation. *Gallant*, 753 F.2d at 1452. The burden then shifts to the Secretary to show that the claimant can perform other types of work that exist in the national economy, given her residual functional capacity,[1] age, education, and work experience. *Id.;* 20 C.F.R. §§ 404.-1505(a); 404.1520(f); 404.1560–.1568 (1986).

---

1. A claimant's residual functional capacity is what she can still do despite her physical or mental limitations. 20 C.F.R. § 404.1545(a) (1986).

The Secretary's decision denying benefits will be disturbed only if it is not supported by substantial evidence or if it is based on legal error. 42 U.S.C. § 405(g); *Nyman v. Heckler,* 779 F.2d 528, 530 (9th Cir.1985).

## I

### Consideration of Subjective Complaints

#### A. Claimant's Testimony

Cotton was 48 years old at the time of the hearing. She has a ninth-grade education and has worked primarily as a maid and a cook. She fractured her left foot and ankle when she fell off a cable car in September 1981. She testified that she experiences severe pain in her leg when she stands or walks. She also suffers severe constant lower back pain. Cotton testified that her pain restricts her usual daily activities. She cannot sweep, vacuum or mop because of her back pain. She has to sit on a chair to reach low objects, because bending over is too painful. She cannot push a grocery cart or carry more than one five-pound bag of groceries.

#### B. Medical Evidence

Dr. McChesney treated Cotton for post-traumatic arthritis in her left ankle following the September 1981 accident. In a July 1982 progress note, Dr. McChesney stated that "some degree [of] pain and swelling remains in left ankle." He concluded that Cotton's ankle "does limit her activities and ability to perform her usual occupation."

An August 1982 musculoskeletal examination by Dr. Stroot revealed muscle weakness and atrophy in the lower left leg. Dr. Stroot noted pain and swelling in the left ankle.

A September 1982 report by Dr. Cohen noted that although Cotton said "that she could only raise her leg a few inches off the floor," she "denies any difficulty walking, climbing stairs, getting out of chairs, or doing any daily activities." Dr. Cohen found:

There is a diffuse weakness of the left leg, both proximal and distal, with a give-way quality; this is evident on direct manual testing. However, functional testing reveals the strength in the left leg to be entirely intact. The patient is able to move around in bed and get out of chairs without any difficulty, at which time she is able to lift her leg very well. She is able to do deep knee bends without any problems. Gait is quite normal except for an occasional limp, and heel walk is done quite well.

. . . .

I am unable to detect any organic neurological problem at the present time. . . . I believe her primary problem is pain, which may well limit her activities. The etiology of this is obscure to me, but does not seem to be neuropathic in nature.

In an October 1982 letter to Cotton, Dr. Cohen stated: "You appear to be in great discomfort from the pain, and are thus unable to work." In a November 1982 office note, Dr. Cohen stated that Cotton found that "the transcutaneous nerve stimulator is working very well and her ankle pain is now quite bearable."[2] An examination was "again within normal limits" and he could "not detect any clear weakness."

Dr. Sciaroni began treating Cotton in February 1983 "for chronic, intractable, low back and left lower extremity pain and complaints of left lower extremity weakness and numbness." Although a lumbar CT scan was normal, a bone scan "revealed irregularly increased uptake throughout the entire lumbar spine." Dr. Chin, who did the bone scan, noted that "[t]he changes in the lumbar spine would be compatible with a degenerative process." Dr. Sciaroni concluded that Cotton had lumbar spinal osteoarthritis, causing an inability to "weight bear for over 30 minutes or sit for over 30 minutes." Dr. Sciaroni stated that Cotton "is totally and permanently dis-

---

**2.** Cotton testified that a nerve stimulator had lessened her leg pain by 80 percent. She also testified, however, that she had to cease this treatment because she could not afford to purchase her own machine. She tried the nerve stimulator on her back, but it gave her no relief.

abled" and he expected her symptoms to worsen with the passage of time.

## C. ALJ's Report

The ALJ found that Cotton was impaired by left ankle arthritis and left leg weakness, but concluded that the symptoms and limitations she described were disproportionate to the objective medical evidence. The ALJ found that although Cotton could no longer work as a cook or a maid,[3] she had the residual functional capacity to perform a wide range of light work. Applying the grids, the ALJ determined that Cotton was not disabled.

## D. Consideration of Excess Pain

■ The Secretary is not required to believe a claimant's pain testimony, and the Secretary may decide to disregard such testimony entirely whenever the claimant fails to submit objective medical findings establishing a medical impairment that could reasonably be expected to produce the claimed pain. 42 U.S.C. § 423(d)(5)(A);[4] *Taylor v. Heckler*, 765 F.2d 872, 876 (9th Cir.1985). If the claimant submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that she experiences pain at a higher level (hereinafter referred to as the claimant's "excess pain"), the Secretary is free to decide to disbelieve that testimony, *Nyman*, 779 F.2d at 531, but must make specific findings justifying that decision, *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir.1985); *Bellamy v. Secretary of Health and Human Services*, 755 F.2d 1380, 1382 (9th Cir.1985).

"Excess pain" is, by definition, pain that is unsupported by objective medical findings. If the Secretary were free to disbelieve excess-pain testimony solely on the ground that it was not supported by objec-

tive medical findings, then the Secretary would be free to reject all excess-pain testimony. This court has rejected that interpretation of § 423(d)(5)(A). "[W]e have never required that the medical evidence identify an impairment that would make the pain inevitable." *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir.1986). Requiring full objective confirmation of pain complaints before believing them "would overlook the fact that pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim," and it would trivialize the importance that we have consistently ascribed to pain testimony, rendering it, in the final analysis, almost superfluous. *Id.* In enacting the Social Security Disability Reform Act, Congress did not intend to render the claimant's pain testimony irrelevant. "Instead, Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* at 1488 n. 4.

■ Thus it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings. Yet this is what the ALJ appears to have done in this case. We therefore reverse and remand with instructions that the Secretary make proper findings regarding Cotton's allegations of disabling pain.

The record contains objective medical, clinical and laboratory evidence that Cotton suffered physical conditions that could reasonably be expected to produce some degree of pain and limitation. Dr. McChesney diagnosed post-traumatic arthritis of the ankle. Dr. Stroot found muscle weakness and atrophy in the lower leg. Dr. Cohen found diffuse leg weakness on man-

---

3. To have reached this finding, the ALJ necessarily had to believe that Cotton suffered some degree of pain and functional limitation as a result of her medical condition.

4. 42 U.S.C. § 423(d)(5)(A), as amended in 1984, requires medical findings demonstrating an impairment "which could reasonably be expected

to produce the pain or other symptoms alleged." Cotton contends that the amended statute is inapplicable here because it was enacted after the ALJ's decision. The amendment, however, applies to "determinations made prior to January 1, 1987." Pub.L. 98–460 § 3(a)(3). Thus, the amended statute applies here.

ual testing. Dr. Sciaroni diagnosed lumbar spinal osteoarthritis. A bone scan revealed lumbar spine changes compatible with a degenerative process. Yet the only reason given by the ALJ for finding Cotton not disabled was that her subjective complaints were disproportionate to the medical evidence. This constitutes legal error and requires reversal.[5]

## II

### Treating Physician's Evidence

Cotton contends that the ALJ erred in disregarding Dr. Sciaroni's evidence about her back problems. This contention has merit and constitutes an independent ground requiring reversal of this case and a remand for further findings by the Secretary.

■ If the ALJ chooses to disregard uncontroverted medical evidence, he must set forth clear and convincing specific reasons for doing so. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975). If the ALJ chooses to disregard a treating physician's medical opinion, he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence. *Jones v. Heckler*, 760 F.2d 993, 995, 997 (9th Cir.1985); *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir.1983). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Swanson v. Secretary*, 763 F.2d 1061, 1065 (9th Cir.1985).

Dr. Sciaroni had been treating Cotton for four months for lumbar spinal osteoarthritis. This diagnosis was at least partially confirmed by a bone scan. Dr. Sciaroni stated that due to the "constancy and severity of her symptoms [Cotton] cannot weight bear for over 30 minutes or sit for over 30 minutes." Sciaroni concluded that Cotton was "totally and permanently disabled."

Although the ALJ recited this evidence in the discussion portion of his decision, he failed to find that Cotton suffered any impairment connected to her back.[6] The only reason given by the ALJ for disregarding Dr. Sciaroni's evidence was that "a statement made by the claimant's physician does not mean that the Administration will determine that the claimant is disabled."

■ While it is true that the Secretary is not obligated to award disability solely on the basis of a treating physician's conclusion, 20 C.F.R. § 404.1527 (1986), the Secretary must provide a reasoned rationale for disregarding a particular treating physician's findings. Even if Dr. Sciaroni's evidence was controverted, the ALJ had to provide at least "specific, legitimate reasons" for rejecting it. *Jones*, 760 F.2d at 995; *Murray*, 722 F.2d at 501–02. And even if the ALJ reasonably disregarded Dr. Sciaroni's conclusion that Cotton was disabled, the ALJ was still required to provide reasons for disregarding Dr. Sciaroni's diagnosis of lumbar spinal osteoarthritis.

■ The ALJ's findings completely disregarded Dr. Sciaroni's medical findings: the ALJ acknowledged Cotton's leg and ankle problems, but ignored her back problems. The ALJ did not give any reason for doing this, and thereby committed legal error. Therefore, on remand of this case,

---

**5.** Two further conclusions flow from our finding that the ALJ erred in his consideration of Cotton's subjective complaints. First, the ALJ's conclusion that Cotton had the residual functional capacity to perform a wide range of light work is not supported by substantial evidence. Cotton testified that she could not carry more than a single five pound grocery bag at one time. She testified that due to leg and back pain she could walk only two and a half blocks before having to rest. She testified that she suffers severe pain if she stands or sits for more than 30 minutes. This evidence demonstrates that Cotton could not perform a wide range of light work as defined by 20 C.F.R. § 404.1567(b) (1986). Second, the ALJ erred by relying exclusively on the grids and not taking account of Cotton's significant nonexertional limitations. *See Perminter v. Heckler*, 765 F.2d 870, 871–72 (9th Cir.1985); *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1472–73 (9th Cir.1984).

**6.** The ALJ's Finding No. 3 stated: "The medical evidence establishes that the claimant has severe hypertension, arthritis of the left ankle and left leg weakness."

the Secretary must give proper consideration to Dr. Sciaroni's evidence.

### III

### New Evidence

Cotton contends that the district court erred by refusing to consider new evidence. This contention lacks merit.

■ A reviewing court may remand a case to the Secretary for consideration of new evidence where: (1) the new evidence is material; and (2) good cause exists for the claimant's failure to incorporate the evidence in a prior proceeding. 42 U.S.C. § 405(g); *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985). To be material, the new evidence must bear directly and substantially on the matter in issue. *Key*, 754 F.2d at 1551. Also, there must be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary. *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380–81 (9th Cir.1984). The question of materiality of the new evidence is one of law reviewed de novo by this court. *Id.* at 1380. To show good cause, the claimant must establish that she could not have obtained the evidence at the time of the administrative proceeding. *Key*, 754 F.2d at 1551.

■ Cotton contends that the district court erred in refusing to consider a January 1985 electromyogram that demonstrated that she had bilateral carpal tunnel syndrome. This finding was made almost 18 months after the ALJ's decision was made. Hence, to meet the materiality requirement, Cotton would be required to show that she had this condition for at least a year and a half before it was diagnosed. *See Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir.1982). Cotton, however, did not complain of any problems with her hands either in her disability applications or at the hearing. Moreover, the January 1985 medical report stated that Cotton had "difficulty grasping and holding things *recently* " (emphasis added). Thus, the evidence indicates that Cotton's carpal tunnel syndrome is a recent development that did not contribute to the problems she initially asked the Secretary to consider.

The new evidence offered by Cotton does not warrant consideration on remand because it is not material to the Secretary's decision denying benefits.

CONCLUSION

We conclude that the ALJ erred both in his consideration of Cotton's pain testimony and in his rejection of Dr. Sciaroni's evidence. Accordingly, we remand the case to the Secretary for further proceedings consistent with this opinion.