**Joseph R. POLNY, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

No. 88–5623.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1988.

Decided Dec. 30, 1988.

---

Suzanne C. Leidner, Leidner & Leidner, Los Angeles, Cal., for plaintiff-appellant.

Nancy E. Wever, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before BROWNING, SCHROEDER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Joseph R. Polny applied in 1984 for Supplemental Security Income benefits on the grounds of disability. An administrative law judge found him not disabled. The Appeals Council denied review. The Secretary of Health and Human Services (the Secretary) thereby denied Polny's application. Polny brought suit in 1986 in the district court under 42 U.S.C. § 405(g). On the basis of findings and recommendations of a magistrate, the district court granted summary judgment for the Secretary. We reverse and remand.

## BACKGROUND

Joseph R. Polny was born November 7, 1957. He has a high school general equivalency degree and one year of training in the field of accounting. He spent six years as an Army reservist working as a cook. As a civilian he has been a cook, a baker, a warehouse worker, a swimming pool cleaner, a cab driver, and a delivery truck driver. In January 1979 while driving for University Stereo, he was held up at gun point and the truck hijacked. The robbery caused him to become anxious and depressed. He has worked at no civilian job longer than four months.

Evidence presented on behalf of Polny in support of his claim of disability showed him to be emotionally unstable, socially inept, and suffering from recurrent bouts of alcoholism. In a report dated February 26, 1982, Louis D. Lunsky, M.D., a psychiatrist, found him to be hopeless, helpless and despairing and rated him as having a severe psychiatric disability. In October 1983 Camarillo State Hospital diagnosed Polny as a schizoid personality with compulsive features and alcohol dependence. Ruth Flack, a social worker who was Polny's therapist at the Hollywood Mental Health Center, reported Polny in January 1986 to be suffering from a recurrent major depression with psychotic features, a borderline personality disorder, and alcohol abuse. Among the specific symptoms shown by Polny according to this 1986 report were hallucinations, recurrent panic attacks, paranoid thinking, and intense, impulsive, and unstable personal relationships. B. Shedhar, M.D., a psychiatrist, also signed Flack's report. Tobey Lytle, an experienced counsellor of alcoholics who

had known Polny as a friend for two years, testified at the administrative hearing that Polny's behavior was explosive, marked by schizoid overtones and paranoid thinking.

On the other hand, Allen Lefstein, a psychiatrist who treated Polny three months after the 1979 robbery and again a year and a half after the robbery, formed the opinion that Polny was not honest in his second examination and was malingering while he returned to a late adolescent pattern of shiftlessness. John Snibbe, Ph.D., a psychologist, found evidence of a schizoid personality and emotional instability, but thought Polny capable of rehabilitation. Bernard Sosner, M.D., a psychiatrist who evaluated Polny in November 1981, found him emotionally unstable and subject to recurrent periods of alcohol abuse but without delusions, hallucinations or abnormal thought. John S. Woodard, M.D., who evaluated Polny on January 7, 1985, found that he suffered from a schizoid personality disturbance with a paranoid trend, alcohol and drug dependence, and chronic neurosis with depressive reactions; but Dr. Woodard found Polny when sober not to have delusions, hallucinations, or abnormal thought. Dr. Woodard said Polny experienced a "moderate restriction in daily activities and interests, a moderate impairment in interpersonal relationships"; no deterioration in personal habits and no intellectual impairments. In January 1985 the Didi Hirsch Community Mental Health Center found Polny's movements, speed, perception, and thinking to be normal and concluded that he showed only mild symptoms of psychological impairment.

At the hearing Polny himself testified to his depression, his sense of helplessness, his daily suicidal thoughts, his belligerence after three drinks, his long history of drinking, his feelings of rejection, his hearing of voices telling him to hurt himself or others. He cried or sniffled throughout his testimony.

The administrative law judge did not find Polny credible. He gave no weight to Tobey Lytle's testimony. He discounted the Flack–Shedhar report of January 1986 as "a letter from a social worker." He relied on the opinions of Doctors Sosner and Woodard in finding that Polny had only a moderate incapacity for employment. A "moderate" incapacity is distinguished for social security purposes from an incapacity that is "marked" or "severe." The administrative law judge concluded that Polny did not suffer from an impairment that was disabling per se, 20 C.F.R. § 12, App. 1, but that he was unable to return to his past relevant work as a truck driver. His limitations were nonexertional.

The judge then found that Polny was capable of performing a wide range of jobs that were not highly stressful, did not require comprehension of complex instructions, and did not require dealing with the public. The judge applied the medical-vocational guidelines or grids contained in 20 C.F.R., Pt. 404, Subpt. P., App. 2 (1985) and held that as Polny could perform the work there described he was not disabled. No vocational expert had testified in support of this conclusion.

## ANALYSIS

■ The major issue on appeal is whether the administrative law judge erred in applying the grids in this case where the applicant's impairment was not exertional. The Secretary argues that Polny had no "significant nonexertional restriction" and so the application of the grids was appropriate. In *Razey v. Heckler*, 785 F.2d 1426 (9th Cir.), *modified* 794 F.2d 1348 (1986), we held that where an applicant had both exertional and nonexertional limitations the use of the grids was permissible. That decision, in accord with other authority— e.g., *Lebron v. Secretary of Health and Human Services*, 747 F.2d 818 (1st Cir. 1984)—recognizes the force of the Secretary's own regulations which state that the grids apply where an individual has a "combination of impairments resulting in both strength limitations and nonexertional limitations." 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). But where, as here, a claimant's nonexertional limitations are in themselves enough to limit his range of work, the grids do not apply, and the testimony of a vocational expert is required to

identify specific jobs within the claimant's abilities. *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir.1988).

■ As to the evidence of Polny's disability, the administrative law judge was entitled to make credibility assessments of Polny's and Lytle's testimony and to give the opinions of Doctors Woodson and Sosner more weight than the opinion of Doctor Lunsky and the Flack–Shedhar report. But to disregard the medical opinion of a claimant's treating physician, the administrative law judge must set out specific reasons for rejecting the opinion. *Cotton v. Bowen*, 799 F.2d 1403, 1409 (9th Cir.1986). In this case the administrative law judge did not identify the Flack–Shedhar report as that of a treating physician but as a letter from a social worker. The judge accordingly did not set out specific reasons for rejecting the report as *Cotton* requires.

On remand the administrative law judge should also make findings as to why he accepts or does not accept the testimony of Tobey Lytle, and how he relates Polny's own testimony to the medical evidence. The effective presentation and fair evaluation of this kind of case is difficult because, to prove his case, the claimant must show that he has the kind of impairment that would make him unable to function as an employee—in other words, that he has the kind of disability that would make most employers unwilling to hire him. In presenting his case the claimant necessarily damages his credibility. The judge who hears his presentation must exercise a delicate discretion in determining whether the claimant's complaints are faked or the product of physical and psychological conditions beyond his control.

REVERSED AND REMANDED.