James L. BATES, Plaintiff–Appellant,

v.

Louis J. SULLIVAN, M.D.,* Secretary
of Health and Human Services,
Defendant–Appellee.

No. 88–3868.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 1989.

Decided Jan. 23, 1990.

Eugene A. Wright and Wallace, Circuit Judges, filed a concurring opinion.

---

* Louis J. Sullivan is substituted for his predecessor, Otis R. Bowen, M.D., as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1).

Before EUGENE A. WRIGHT, WALLACE and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

James L. Bates appeals the district court's judgment affirming the denial by the Secretary of Health and Human Services of his application for disability benefits. Bates argues that (1) the administrative law judge ("ALJ") failed to make findings sufficient to discredit his subjective pain testimony, (2) the ALJ erred in not giving weight to a state agency determination that he is disabled, (3) the ALJ improperly used the Medical–Vocational Guidelines ("grids") to find him not disabled, and (4) the Appeals Council improperly disregarded the opinion of an examining psychiatrist. We have jurisdiction over Bates' timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## FACTS AND PROCEEDINGS

Bates was born in 1952. He attended school through the tenth grade and later obtained a GED, indicating the equivalent of a full high school education. He has worked as a carpenter's helper, a welder, and for a brief period as a security guard.

Bates has not worked since October 1983 when he quit his job as a welder at a stove factory due to back pain. His back was injured in 1978 in a car accident and reinjured in October 1983 while Bates was picking up a stove at work. Since he left his job at the stove factory Bates has been receiving time-loss benefits from the State of Washington's Department of Labor and Industries for being "temporarily totally disabled."

Eli Halpern, Halpern & Smith, P.S., Rochester, Wash., for plaintiff-appellant.

Gary J. Thogersen, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.

In addition to his back pain, Bates reports he suffers from other physical and nonphysical limitations. In 1982 he received surgical treatment to his wrists for injuries suffered in a knife attack and in

1984 he fell from a horse and fractured his skull. Bates has abused alcohol and drugs in the past. In recent years he has suffered from emotional problems, including depression and periods of anger, for which he has been treated by a psychologist.

Bates applied for disability insurance benefits in November 1984. He alleged that he became disabled on October 20, 1983 as a result of injuries to his back, head and hands, and that he suffered from chronic back pain, alcohol and drug abuse, and emotional problems. Bates did not contend that his physical problems met or equaled a listing, but rather that the combination of his mental and physical impairments render him disabled. Bates' Social Security earnings record shows that he met the disability insurance status requirements through December 31, 1984.

Upon denial of his application, Bates requested a hearing. An administrative hearing was held before an ALJ on October 20, 1986. The ALJ determined that Bates' eligibility for disability benefits was restricted to the period between October 20, 1983, the date Bates said he became unable to work, and December 31, 1984, the last date that Bates met the disability insurance status requirements of the Social Security Act. The ALJ found that Bates was incapable of performing his last work but that he retained the ability to perform the full range of light work. The ALJ also found that Bates' testimony of chronic disabling back pain was not credible and that his nonexertional limitations would cause no significant vocational limitations. Applying the grids the ALJ determined that Bates was not disabled. Bates requested that the Appeals Council review the ALJ's decision and he submitted new evidence consisting of a report detailing the results of a psychological evaluation conducted in March 1987. The Appeals Council considered this report but declined to review the ALJ's decision which therefore became the final decision of the Secretary.

Bates then sought judicial review in the district court. The district court referred the case to a magistrate who issued a report recommending that the case be re-manded to the Secretary because the ALJ did not make findings sufficient to discredit Bates' subjective pain testimony. The district court, after reviewing the evidence, rejected this recommendation and issued a judgment affirming the decision of the Secretary denying Bates disability benefits. Bates appeals.

## STANDARD OF REVIEW

We review the judgment of the district court de novo. *Adams v. Bowen,* 872 F.2d 926, 927 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989). The Secretary's denial of benefits will " 'be disturbed only if it is not supported by substantial evidence or if it is based on legal error.' " *Brawner v. Secretary of Health and Human Services,* 839 F.2d 432, 433 (9th Cir.1988) (quoting *Green v. Heckler,* 803 F.2d 528, 529 (9th Cir. 1986)); *see* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), but "less than a preponderance." *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988) (quoting *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n. 10 (9th Cir.1975)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). This court must review the record as a whole and consider adverse as well as supporting evidence. *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989).

## ANALYSIS

### A. *Bates' Subjective Pain Testimony*

■ We first consider Bates' argument that the ALJ improperly rejected his subjective pain testimony. Bates argues that the ALJ did not make the required specific findings to justify his decision to discredit Bates' testimony of disabling chronic back pain.

■ The Secretary is not required to believe a claimant's pain testimony, and the Secretary may decide to disregard such testimony entirely whenever the claimant fails to submit objective medical findings that could reasonably be expected to produce the claimed pain. *Taylor v. Heckler,* 765 F.2d 872, 876 (9th Cir.1985); 20 C.F.R. § 404.1529 (1988); Social Security Ruling 88–13. However, "the Secretary must make specific findings justifying that decision." *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir.1989) (quoting *Green v. Heckler,* 803 F.2d 528, 532 (9th Cir.1986)).

At the hearing Bates testified that his chronic back pain renders him incapable of working. He said that as a result of this back pain he is unable to pick up more than ten pounds or carry anything weighing five pounds. He also said that he is able to sit comfortably for only about fifteen minutes at a time, that he cannot walk long distances without increasing his back pain, and that he is unable to drive without stopping frequently to walk around. The ALJ rejected this testimony as not credible.

Relevant portions of the ALJ's decision read as follows:

> ... [R]ecent records from the claimant's treating physician as well as an earlier assessment from his chiropractor, indicate that [Bates] retains the functional capacity to perform a light level of work-related activities; that is, he is able to lift and carry a maximum of 10 pounds frequently, or up to 20 pounds occasionally. The claimant's testimony that he is only able to lift and carry a maximum of 5 pounds is not supported by the medical evidence, and it is not accepted by the Administrative Law Judge....

## FINDINGS

...

The claimant's testimony concerning his exertional limitations was not supported by the reports of his treating physician, and was not fully credible.

The ALJ made a specific finding discrediting Bates' subjective pain testimony.[1] The finding is based on reports from Bates' own doctors that Bates is able to perform light-level work activities. The ALJ in his decision referred to these reports in reaching the conclusion that Bates' subjective pain testimony was not credible. In a vocational retraining evaluation it was noted that Dr. Leone, Bates' treating chiropractor, reported that he considered Bates able to engage in sedentary to light work activities, with the ability to stand and walk up to four hours during an eight-hour work day, and lift and carry ten to twenty pounds occasionally. Bates' treating physician, Dr. Nacht, an orthopedic specialist, in a report to a rehabilitation agency stated that he considered Bates able to lift up to twenty pounds, stand for one hour, and walk for one to two hours at a time.

We have stated that an ALJ may not discredit subjective pain testimony solely on the ground that it is not fully corroborated by objective medical findings. *Hammock v. Bowen,* 879 F.2d at 502; *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.1988) (*Varney I*); *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir.1986).

In *Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275, 1279 (9th Cir.1987), we held that an ALJ's findings discounting a claimant's subjective pain testimony are not sufficient where the ALJ makes only a general finding and does not state which pain testimony is not credible, nor what medical evidence suggests that the claimant's claim of pain is not credible. *See also Varney,* 846 F.2d at 584. The ALJ's findings in the present case do not

---

1. Bates' alleged exertional limitations are pain-related. His hearing testimony indicates that it is not physical inability, but rather his back pain, which prevents him from working:

> Q. [A]re you able to lift 20 lbs, occasionally?

> A. I guess—yeah I could pick it up. But, you now[sic], it's hurting me. I could feel it in the lower part of my back.

> Q. Could you pick it up several times?

> A. Sure. I guess I probably could. My life depended on it, I could probably pick it right up.

Transcript of Hearing, p. 49.

suffer from such flaws. The ALJ referred specifically to portions of Bates' testimony and discussed the opinions of Bates' treating chiropractor and physician which indicate that Bates' testimony is not credible. The ALJ discredited Bates' testimony not because it was not fully corroborated by medical evidence but rather because the medical evidence—the opinions of his own doctors—affirmatively contradicts Bates' allegations of disabling back pain.

■ We afford greater weight to a treating physician's opinion because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987). Moreover, credibility determinations are the province of the ALJ. *Russell v. Bowen,* 856 F.2d 81, 83 (9th Cir.1988). Bates' subjective pain testimony was impeached by the opinions of his own doctors. The ALJ referred to these reports in his decision and he made a specific finding concluding that Bates' testimony was not credible. We conclude that the ALJ made the requisite specific findings and that these findings are supported by substantial evidence. The ALJ was justified in rejecting Bates' subjective pain testimony.

### B. *State Agency Determination*

■ We turn next to Bates' argument that the ALJ erred in failing to give weight to the determination by the State of Washington's Department of Labor and Industries that he is "temporarily totally disabled."

■ Social Security regulations state that a determination by another governmental agency that a person is disabled is not binding on the Secretary. 20 C.F.R. § 404.1504 (1988). This is because the Secretary must make a disability determination based on Social Security law and not on the rules of other agencies. *Id.* A state finding of disability may be introduced into evidence before the Secretary, but the Secretary may attribute as much or as little weight to it as the Secretary deems appropriate. *Wilson v. Heckler,* 761 F.2d 1383, 1385 (9th Cir.1985). This is so even if

the claimant has been found eligible to receive state disability benefits under a standard more rigorous than those used to determine eligibility for SSI and Title II disability benefits. *Id.*

Both the Social Security regulations and our decisions establish that the Secretary is not bound by a state agency determination of disability. The State of Washington's determination that Bates is "temporarily totally disabled" is not binding on the Secretary. Bates' argument that the Secretary erred in failing to give weight to this determination is thus without merit.

### C. *ALJ's Use of the Grids*

■ We next consider Bates' contention that the ALJ's use of the grids to deny benefits was error because he suffers from both exertional and nonexertional limitations.

■■ The use of the grids to find a claimant not disabled can be appropriate when both exertional and nonexertional limitations are alleged. *See* 20 (C.F.R. pt. 404, subpt. P., App. 2) § 200.00(e) (1988). In such a case the grids may be used to find a claimant not disabled when the ALJ finds that the claimant's nonexertional limitations do not significantly affect his exertional capabilities. *Razey v. Heckler,* 785 F.2d 1426, 1430 (9th Cir.1986), *modified,* 794 F.2d 1348 (1986). On the other hand, where a claimant's nonexertional limitations *do* significantly limit his range of work, then use of the grids to find him not disabled is inappropriate. *Polny v. Bowen,* 864 F.2d 661, 663–64 (9th Cir.1988).

In his decision the ALJ made findings that Bates retained the capacity to do light work and that his "nonexertional limitations would cause no significant vocational limitations." These findings were supported by substantial evidence including reports from Bates' treating physician, chiropractor and psychologist. Use of the grids to make a finding of not disabled was appropriate under these circumstances.

### D. *Rejection of Psychiatrist's Opinion*

■ We finally consider Bates' argument that the Appeals Council improperly

rejected the opinion of a consulting psychiatrist, Dr. Killoran.

Two months after the ALJ issued his decision and while the matter was pending before the Appeals Council Bates submitted new evidence consisting of a report by Dr. Killoran detailing the results of a psychological evaluation of Bates. The psychological evaluation was based primarily on a mental status examination of Bates conducted by Dr. Killoran in March 1987 although the report also summarized and considered Bates' psychological and medical history. Dr. Killoran's diagnosis of Bates included chronic paranoid schizophrenia and amnestic syndrome secondary to alcohol abuse/head injury/polysubstance abuse. Dr. Killoran concluded that Bates is "unemployable, severely debilitated and has a poor prognosis." Bates argues that Dr. Killoran's report proves that he is disabled.

Social Security regulations provide that where new and material evidence is submitted to the Appeals Council with the request for review, the entire record will be evaluated and review of the ALJ's decision will be granted where the Appeals Council finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970. The Appeals Council shall consider any new and material evidence only where it relates to the period on or before the date of the ALJ's decision. *Id.*

The Appeals Council considered Dr. Killoran's report but concluded that it did not provide a basis for review of the ALJ's decision. The Appeals Council explained that this was because the diagnoses in the report were based primarily on the mental status examination of Bates conducted in March 1987 and that they were not consistent with the medical evidence relative to the period ending on December 31, 1984, the last date Bates met the disability insured status requirements of the Social Security Act.

Bates contacted Dr. Killoran in March 1987, months after the ALJ's adverse decision and years after his insured status expired. Dr. Killoran's summation that "the net result of the *present* clinical picture is that Mr. Bates is severely disabled from a psychological point of view and has a very poor prognosis," (emphasis added) reinforces the conclusion that the report was not relevant to the period in question. Moreover, the opinion of Dr. Killoran, a consulting psychiatrist who was first contacted months after the ALJ's adverse decision, is not consistent with medical evidence, including psychological evaluations and treatment records, pertaining to the relevant time period. We conclude that the Appeals Council did not err in rejecting Dr. Killoran's opinion and denying the request for review.

## CONCLUSION

The judgment of the district court affirming the Secretary's denial of Bates' application for disability benefits is AFFIRMED.

EUGENE A. WRIGHT and
WALLACE, Circuit Judges, concurring:

We concur in the result reached by Judge Thompson, and in parts B, C, and D, but we cannot concur with the reasoning in part A of the opinion which addresses Bates's subjective pain testimony. In particular, we disagree with Judge Thompson's determination that an administrative law judge (ALJ) may not discredit subjective pain testimony solely on the ground that it is not fully corroborated by objective medical findings. In order to clarify our position, it is necessary to trace the evolution of the law regarding subjective pain testimony.

Prior to its enactment of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, 98 Stat. 1794 (the Reform Act), Congress had not specifically addressed whether an individual's subjective pain could be considered disabling. Congress, however, had clearly stated:

The term "disability" means—
(A) inability to engage in any substantial gainful activity *by reason of any medically determinable physical or mental impairment* which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1) (1983) (emphasis added). In section 423(d)(3), the statute further stated:

For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities *which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.*

(Emphasis added.) While this statutory language does not mention subjective pain testimony, it surely indicates that Congress intended that an alleged impairment had to be "medically determinable" before it could be considered disabling.

The Secretary had also promulgated a regulation concerning pain which provided:

If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause for the symptom. *We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.*

20 C.F.R. §§ 404.1529 and 416.929 (1983) (emphasis added). Although similar to the statutory language, the Secretary's regulation further clarified the importance of medical evidence of pain by requiring that the medical condition alleged to cause the complained of pain be of the type "reasonably expected to produce" that pain. The wording of the regulation was clear: a claimant would never be found disabled unless he could point to a medical condition which caused him to suffer from the degree of pain which he alleged.

Given the plain language of the statute and the Secretary's regulation, our task should have been: where a claimant's allegations of pain were not corroborated by medical evidence, we would conclude from the record as a whole that there was substantial evidence justifying the Secretary's finding that the claimant was not disabled. Despite this clear statutory and regulatory language, however, this circuit's pre-Reform Act decisions regarding subjective pain testimony were at best unclear and possibly inconsistent. *Compare Gonzalez v. Harris,* 631 F.2d 143, 145–46 (9th Cir. 1980) (*Gonzalez*) (despite claimant's testimony regarding her pain she failed to prove disability because of a lack of supporting medical evidence), *with Mark v. Celebrezze,* 348 F.2d 289, 292 (9th Cir.1965) (recognizing "the basic statutory mandate that disability benefits ... are to be awarded only in cases of disability 'by reason of any [some] medically determinable physical or mental impairment,'" but then concluding that the ALJ must determine the "truthfulness of allegations of subjective pain"), and *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983) (*Murray*) (citing *Mark* for the proposition that the ALJ must make specific findings refuting a claimant's pain testimony, but failing to state whether specific medical findings alone are sufficient).

In response to this kind of non-uniformity and because of the inconsistency in other circuits' treatment of subjective pain, Congress amended section 423 to include language concerning pain testimony. *See* S.Rep. No. 466, 98th Cong., 2d Sess., 23–24 (1984) ("[I]f courts ignore the Secretary's regulatory authority and the expressed Congressional concerns for careful administration, national uniformity and verifiable evidence, the Committee has little choice but to draw the statute [§ 423(d)(5)(A)] as narrowly as possible."); *see also* H.R.Rep. No. 618, 98th Cong., 2d Sess. 13, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3038, 3051 ("The committee is concerned that a fragmented standard is now in effect for using subjective evidence of pain."). The amendment, 42 U.S.C. § 423(d)(5)(A), states in part:

An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain ... shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings,* established by medically acceptable clinical or laboratory diagnostic techniques, *which show the existence of a medical impairment* that results from anatomical, physiological, or psychological abnormalities *which could reasonably be expected to produce the pain ... alleged* and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain ... which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain ... established by medically acceptable clinical or laboratory techniques ... must be considered in reaching a conclusion as to whether the individual is under a disability.

*Id.* (emphasis added). Thus, according to the amended statute, in order to prove that pain is disabling, "there must be medical signs and findings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain ... alleged." Significantly, the language of the statute uses a definite article, referring to *"the* pain" alleged. It does not refer to "some of the pain" alleged by the claimant, nor does it refer to medical impairments expected to produce "a certain amount of pain," nor to "excess pain." *See Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir.1986) (*Cotton*). Thus, read in its most direct and plain sense, section 423(d)(5)(A) requires evidence of a medical condition which "could reasonably be expected to produce" the actual pain, in amount and degree, alleged by the claimant. Unless a claimant can produce "objective medical evidence of" such a medical

impairment, he or she is not disabled under the statute.

Not only is this reading of the statutory language compelled by the statute's plain language, it is also completely consistent with the legislative history of section 423(d)(5)(A). The Senate Finance Committee report emphasized that section 423(d)(5)(A) was intended to be:

a codification of the regulations and policies currently followed by the Administration. This rule prohibits basing eligibility for benefits solely on subjective allegations of pain (or other symptoms). There must be evidence of an underlying medical condition and (1) *there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition* or (2) the objectively determined medical condition must be of a *severity* which can reasonably be expected to give rise to the alleged pain.

S.Rep. No. 466 at 24 (emphasis added); *see also* H.R.Conf.Rep. No. 1039, 98th Cong., 2d Sess. 29 (1984), 1984 U.S.Code Cong. & Admin.News p. 3087 ("The statutory language ... for evaluation of pain is amended to more accurately reflect current policies."). Plainly, Congress concurred in the Secretary's regulations and intended a claimant to produce medical evidence corroborating the "severity" of the pain that he alleged.

Indeed, the comments in the legislative record are unanimous in concluding that section 423(d)(5)(A) requires that a claimant's allegation of subjective pain, including the severity of the alleged pain, be confirmed by objective medical evidence. Addressing the modifications made in the Finance Committee to Senators Levin and Cohen's original bill, Senator Long, the chairman of that committee, specifically criticized a district court opinion, *Polaski v. Heckler,* 585 F.Supp. 1004, 1008–09 (D.Minn.) (*Polaski*), aff'd, 739 F.2d 1320 (8th Cir.), *ordered remanded on other grounds,* 751 F.2d 943 (8th Cir.1984), *vacated,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), which had held that medical evidence need not fully support a claimant's complaints of pain. He remarked:

On the basis of [the district judge's] findings that the Secretary was not obeying what he calls "Eighth Circuit law," this judge ordered the Secretary to substitute his policy judgment for hers [sic] (and that of Congress) in carrying out the Social Security Act in an area covering seven States.

This case would not be so troubling if it were atypical. But apparently, it is almost the judicial norm. Courts do, of course, have the responsibility to carry out the law and resolve questions of interpretation. In so doing, however, they should be guided by the statute and its legislative history.... If the judge in this case had bothered to examine the statute and legislative history, he would have ample evidence of Congress's concern not that the law be more broadly construed, but that it be more narrowly construed. He would also have found great concern on the part of Congress that the law be administered more uniformly.... Circuit courts are not regional legislatures.

130 Cong.Rec. S6211 (daily ed. May 22, 1984). Elsewhere in the legislative record, Senator Long again criticized courts for "substitut[ing] their policy judgment that subjective allegations [of pain] must be considered even in the absence of objective evidence of the type required by regulation" and argued that "[u]ltimately, this would mean that eligibility would depend upon the subjective credibility judgment made by each individual adjudicator of claims." *See* 130 Cong.Rec. S11458 (daily ed. Sept. 19, 1984). Drafted with these concerns in mind, section 423(d)(5)(A) was designed to preclude the eventuality of eligibility determinations based on the "subjective credibility judgment made by each individual adjudicator," not to insure it.

Even supporters of a more relaxed standard for finding disability based on subjective complaints of pain conceded that the statute did not adopt their position. Responding to the Finance Committee's modifications to his own proposed pain standard, Senator Levin remarked:

The bill codifies the current SSA standard for the consideration of pain in determining eligibility. Basically this standard requires the presence of a medical condition which can reasonably be expected to cause the pain. The final version of our[, Senators Levin and Cohen,] bill, as offered as a floor amendment on November 17, 1983, ... is quite different. It codifies a pain standard, but it does not accept the SSA's current pain standard. Our pain standard does not require evidence or a finding of a medical condition as the cause of the pain, because we recognize that an underlying medical condition cannot always be identified.... Our pain standard would require medical findings of the presence of pain, without the need to show a medical condition causing the pain.

SSA's pain standard has been the subject of frequent and lengthy litigation in which the SSA often is the loser. The courts are not willing to accept SSA's rigid standard, for assessing pain, nor should we.

. . . .

I hope the conferees will give careful attention to this provision and resolve to go forward with a 9 to 12 month study without codifying any standard at this time.

130 Cong.Rec. S6232 (daily ed. May 22, 1984). Senator Cohen similarly remarked:

I share Senator Long's belief that subjective statements of pain should not be considered conclusive evidence of disability. I believe, however, that the language in the Levin–Cohen amendment struck the proper balance by requiring findings, established by medically acceptable clinical or laboratory diagnostic techniques, which demonstrate the existence of the pain, but by not requiring proof of an underlying medical condition. With the language substituted by the Finance Committee, we risk denying disability benefits to some workers who suffer from debilitating pain that leaves them unable to work but for which a cause cannot be pinpointed.

. . . .

I hope that the conferees will agree to strike the pain standard included in the

Finance Committee bill and either adopt the standard in the Levin–Cohen amendment or simply await the results of the study [on pain] before legislating in this area.

130 Cong.Rec. S6214 (daily ed. May 22, 1984); *see also* 130 Cong.Rec. S6216–17 (daily ed. May 22, 1984) (remarks of Sen. Heinz) (stating reservations about the bill's pain standard because it denied benefits in cases where an individual's pain could not be objectively identified). The House and Senate conferees, however, rejected Senators Levin and Cohen's request for a more lenient pain standard and retained the Finance Committee's modifications, which codified the Secretary's standard for consideration of pain. *See* H.R.Conf.Rep. No. 1039 at 29, 1984 U.S.Code Cong. & Admin. News p. 3087; 130 Cong.Rec. H9836 (daily ed. Sept. 19, 1984) (statement of Representative Pickle, Social Security Subcommittee Chairman) ("With reference to pain, the conference agreement puts present regulatory policy into statute."); *compare* 130 Cong.Rec. S6204 (daily ed. May 22, 1984) (Finance Committee language on evaluation of pain sent to the Conference Committee) *with* 130 Cong.Rec. H9828 (daily ed. Sept. 19, 1984) (conference agreement language), *and* 42 U.S.C. § 423(d)(5)(A).

In *Cotton,* we stated that "it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." 799 F.2d at 1407. The legislative history of section 423(d)(5)(A) thus creates a problem with *Cotton's* standard since Congress appears to have specifically rejected the position taken by *Cotton.* Furthermore, the legislative history confirms that the statutory language means just what it says: the Secretary may reject allegations of pain unless the claimant is able to point to a medical condition which could reasonably be expected to produce that pain.

Despite the clarity of section 423(d)(5)(A)'s language and legislative history, we would feel compelled to follow *Cotton's* interpretation of section 423(d)(5)(A) had it been our only circuit precedent to address the pain standard en-

acted in section 423(d)(5)(A). It, however, was not. *Cotton,* of course, was required to follow our circuit's controlling authority. *See United States v. State of Washington,* 872 F.2d 874, 880 (9th Cir.1989) (prior published authority may not be overruled except through an en banc proceeding); *Long v. Bureau of Economic Analysis,* 646 F.2d 1310, 1320 (9th Cir.) (same), *vacated and remanded on other grounds,* 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981). Thus, *Cotton* must be interpreted along with our other circuit authority.

Our first explicit interpretation of section 423(d)(5)(A) came in *Nyman v. Heckler,* 779 F.2d 528, 531 (9th Cir.1985) (*Nyman*). There we rejected a claimant's pain testimony, holding that "a claimant's self-serving statements may be disregarded *to the extent they are unsupported by objective findings.*" *Id.* at 531 (emphasis added). We also rejected the claimant's argument that we should adopt the standard of pain set forth by the Eighth Circuit in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984) (*Polaski II*). *Id.* Yet the standard set forth in *Polaski II* and rejected in *Nyman* was precisely the one adopted in *Cotton:* "The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Polaski II,* 739 F.2d at 1322. Finally, we stated in *Nyman* that the newly enacted standard on pain was "not inconsistent with the *Gonzalez* standard ... even though the Reform Act is more specific in its language." 779 F.2d at 530–31. In *Gonzalez,* we rejected an individual's assertion of disabling pain because it was not supported by objective medical evidence. 631 F.2d at 145–46. Thus, our first pronouncement on the newly amended section 423(d)(5)(A) made it clear that the Secretary is free to disregard complaints of pain which are not supported by, or which are inconsistent with, medical findings.

Our other opinions filed soon after the enactment of the Reform Act, while not citing directly to section 423(d)(5)(A), also were faithful to the statutory language and legislative intent. In *Taylor v. Heckler,*

765 F.2d 872 (9th Cir.1985) (*Taylor*), we stated that "[i]n order for pain to be disabling, subjective complaints must be accompanied by medical evidence," and concluded that "[i]n light of Taylor's failure to substantiate her claim by clear medical evidence, we must uphold the Secretary's decision." *Id.* at 876. In *Miller v. Heckler*, 770 F.2d 845 (9th Cir.1985) (*Miller*), we rejected a claimant's pain allegation, stating, "[i]n light of Dr. Dhalla's report, which found no significant limitations due to pain, the ALJ's findings are supported by substantial evidence." *Id.* at 849.

The clear statutory language and the controlling precedent in *Nyman, Taylor*, and *Miller* form easily identifiable and binding authority for us to decide this case. The ALJ's findings were sufficient to discredit Bates's subjective pain testimony. The ALJ found that Bates's "testimony that he is only able to lift and carry a maximum of 5 pounds is not supported by medical evidence." The medical evidence to which he referred includes the testimony of both Dr. Leone, Bates's treating chiropractor, and Dr. Nacht, Bates's treating physician. Dr. Leone reported that he considered Bates able to engage in sedentary to light work activities, with the ability to stand and walk for up to four hours during an eight-hour day, and to lift and carry 10 to 20 pounds occasionally, with no restrictions on the use of his hands or feet. Dr. Nacht opined that Bates is able to lift up to 20 pounds, stand for up to one hour, and walk for one to two hours at a time. It is clear, therefore, that Bates's testimony that pain prevents him from lifting more than five pounds is not accompanied by evidence of "a medical condition that could be reasonably expected to produce" that pain. 20 C.F.R. §§ 404.1529 and 416.929 (1989). We therefore affirm the decision of the ALJ on the disabling pain issue on this basis. *Nyman*, 779 F.2d at 531; *Miller*, 770 F.2d at 848–49; *Taylor*, 765 F.2d at 876.

Although our decision is soundly grounded in clear statutory interpretation and circuit precedent, Judge Thompson does not join in our opinion. His disagreement with our reasoning, we believe, stems from his failure to follow the binding authority cited earlier. How we got to this disagreement requires an analysis of some of our cases decided in the last three years.

The first case to depart from our circuit precedent was *Howard v. Heckler*, 782 F.2d 1484 (9th Cir.1986) (*Howard*). *Howard* cited *Miller* and *Nyman* merely for the straightforward propositions that the ALJ must make specific findings and that the ALJ's assessment of the claimant's pain is entitled to great deference. *Id.* at 1488. *Howard*, however, failed to offer any basis for distinguishing *Nyman* and *Miller's* clear holdings that a claimant's allegations of pain must be substantiated by medical evidence. *Id.* Instead, *Howard* concluded that subjective pain testimony need not be fully corroborated by medical evidence. *Id.* Citing to *Beavers v. Secretary of H.E.W.*, 577 F.2d 383, 386 (6th Cir.1978), a pre-Reform Act Sixth Circuit decision, *Howard sub silentio* overruled *Nyman's* interpretation of section 423(d) (5)(A), stating that

> if such a requirement were imposed, "there would be no occasion for subjective, personal testimony in a disability hearing." Furthermore, requiring that pain be corroborated by such rigorous proof would overlook the fact that pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim.

782 F.2d at 1488 (citations omitted). Whatever its merits, this argument seems to paraphrase Senators Levin and Cohen's argument which was legislatively rejected. *See* discussion of Senator's remarks, *supra* at 1066–68. Thus, *Howard* not only misinterpreted section 423(d)(5)(A), but failed to follow existing circuit precedent.

*Howard* alone, however, does not compel Judge Thompson's position. Our court subsequently treated *Howard* as merely an isolated departure from our precedent. In *Green v. Heckler*, 803 F.2d 528, 532 (9th Cir.1986), we distinguished *Howard* on the basis of its unique procedural posture: in *Howard* the appellate council rejected the

ALJ's findings on pain without stating reasons, whereas in *Green* the appellate council accepted the ALJ's pain findings. Thus limiting *Howard, Green* properly followed *Nyman,* the binding circuit precedent. Similarly, Judge Thompson could also have followed *Nyman,* but chose instead to follow *Cotton,* which appears inconsistent with the *Nyman-Miller-Taylor* precedent. *Cotton* stated:

If the claimant submits objective medical findings establishing a medical impairment that would normally produce a certain amount of pain, but testifies that she experiences pain at a higher level (hereinafter referred to as the claimant's "excess pain"), the Secretary is free to decide to disbelieve that testimony, but must make specific findings justifying that decision.

"Excess pain" is, by definition, pain that is unsupported by objective medical findings. If the Secretary were free to disbelieve excess-pain testimony solely on the ground that it was not supported by objective medical findings, then the Secretary would be free to reject all excess-pain testimony. This court has rejected that interpretation of § 423(d)(5)(A).

. . . .

[I]t is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.

799 F.2d at 1407.

As the legislative history makes clear, section 423(d)(5)(A) was drafted in an attempt to avoid the result advocated by *Cotton* rather than command it. In fact, viewed side-by-side, *Cotton*'s language is a precise paraphrase of that employed in *Polaski,* the district court decision which provoked the Senate Finance Committee's ire, *see* 130 Cong.Rec. S6211 (daily ed. May 22, 1984) (Statement of Finance Committee Chairman, Senator Long, regarding the Committee's modifications to the original bill), and contributed to the narrow pain standard enacted in section 423(d)(5)(A). A comparison of the language employed in *Polaski* and *Cotton* is instructive. The district court in *Polaski* concluded:

To require that the medical evidence fully supports [sic] the individual's complaints of pain ignores the reality that each person is different in the way that he deals with his particular impairment.

. . . .

"The Secretary must give consideration to subjective complaints of pain and not disregard them solely because they are not fully corroborated by the objective medical evidence."

*Polaski,* 585 F.Supp. at 1008, *quoting Nelson v. Heckler,* 712 F.2d 346, 348 (8th Cir. 1983). *Cotton* similarly concluded:

Requiring full objective confirmation of pain complaints before believing them "would overlook the fact that pain is a highly idiosyncratic phenomenon, varying according to pain threshold and stamina of the individual victim". . . .

. . . .

Thus, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.

799 F.2d at 1407, *quoting Howard,* 782 F.2d at 1488. Thus, *Cotton* comes full circle to precisely the position that Congress so assiduously sought to avoid in enacting section 423(d)(5)(A).

Indeed, in holding that an ALJ may not "discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings," *Cotton,* 799 F.2d at 1407, *Cotton* "reverses" section 423(d)(5)(A)'s language that "[a]n individual's statement as to pain . . . shall not alone be conclusive evidence of disability." Instead of requiring the ALJ to look beyond subjective complaints, *Cotton* requires the ALJ to look beyond objective medical evidence. Instead of following the statute's command that "[o]bjective medical evidence must be considered," 42 U.S.C. § 423(d)(5)(A), *Cotton* dictates that the ALJ must consider subjective evidence, and make specific findings regarding that evidence. In sum, the holding in *Cotton* is a complete departure from both the plain

language of section 423(d)(5)(A) and its legislative history.

Under section 423(d)(5)(A), we are unable to devise a way to distinguish this case from our circuit's controlling authority—*Nyman, Taylor,* and *Miller.* We therefore conclude that *Cotton* and its progeny, *see, e.g., Stewart v. Sullivan,* 881 F.2d 740, 743–44 (9th Cir.1989); *Hammock v. Bowen,* 867 F.2d 1209, 1213–14 (9th Cir.1989), *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 583–84 (9th Cir. 1988); *Gamer v. Secretary of HHS,* 815 F.2d 1275, 1279 (9th Cir.1987), create a clear circuit conflict. Unless there is some way to distinguish *Cotton,* we would be obliged to request a rehearing en banc. But we believe there is a way.

*Cotton* is based upon section 423(d)(5)(A). We have earlier pointed out that *Cotton*'s interpretation of the section is wrong—but clearly it is based upon it. However, section 423(d)(5)(A) has a sunset clause which makes it ineffective for cases in which the determination is rendered after January 1, 1987. *See* Reform Act, Pub.L. No. 98–460, § 3(a)(3), 98 Stat. 1799–1800; *see also McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1002–03 (6th Cir.1988) (describing sunset provision); *Hollis v. Bowen,* 837 F.2d 1378, 1383 (5th Cir.1988) (same). The Appeals Council's decision upholding the ALJ's decision and denying Bates disability benefits was rendered on May 31, 1987. Accordingly, section 423(d)(5)(A) does not apply to Bates.

Congress attached a sunset provision to section 423(d)(5)(A) because it had intended, sometime before January 1, 1987, to develop a permanent standard for the evaluation of pain based on a study conducted by the Secretary's "Commission on the Evaluation of Pain." *See* Reform Act, Pub.L. No. 460, § 3(b), 98 Stat. 1799–1800; H.R.Conf.Rep. No. 1039 at 28–29; H.R.Rep. No. 618 at 13–14, 1984 U.S.Code Cong. & Admin.News pp. 3050–51, 3086; S.Rep. No. 466 at 24 ("The [Finance] Committee anticipates that the results of this study will help clarify [the pain] issue. If necessary, the Committee will be ready to consider further legislation which may be appropriate in light of the study."). As of yet, however, no such standard has been promulgated. Thus, we may distinguish *Cotton* and its progeny on the ground that they were based upon a statute that does not apply to the determination rendered in this case.

In the absence of a statutory standard, the Secretary's standard for accepting subjective pain testimony, *see* 20 C.F.R. §§ 404.1529 and 416.929 (1989), is controlling. As the Senate Finance Committee Report stated,

> [s]ince [§ 423(d)(5)(A)] simply codifies existing practice, the termination of the provision would not modify the rules governing the program, but it would fully restore the Administration's current degree of flexibility to implement regulatory changes which might then appear appropriate. Any such changes would, of course, have to be consistent with the policy guidance contained in the law and its legislative history.

S.Rep. No. 466 at 24. Thus, despite section 423(d)(5)(A)'s expiration, the law regarding pain remains unchanged: section 423(d)(5)(A) was designed to incorporate the Secretary's then-current regulatory policy into statute, *see* H.R.Conf.Rep. No. 1039 at 29, 1984 U.S.Code Cong. & Admin. News p. 3087; 130 Cong.Reg. H9836 (daily ed. Sept. 19, 1984) (statement of Representative Pickle, Social Security Subcommittee Chairman) ("With reference to pain, the conference agreement puts present regulatory policy into statute."), and the text of the Secretary's current regulation is the same as it was prior to the enactment of section 423(d)(5)(A). *Compare* 20 C.F.R. §§ 404.1529 and 419.929 (1989) *with* 20 C.F.R. §§ 404.1529 and 416.929 (1983).

The fact that the expiration of section 423(d)(5)(A) does not change the law concerning subjective pain testimony does not, of course, suggest that *Cotton*'s standard can somehow be read into the Secretary's regulation. Rather, we must examine the language of the Secretary's regulations independent of the case law interpreting section 423(d)(5)(A). Since the approach taken in *Cotton* led to a mistaken interpretation of section 423(d)(5)(A), it would also lead to

a mistaken interpretation of sections 404.-1529 and 416.929. These sections plainly state that the Secretary "will never find that [an applicant] [is] disabled based on [his] symptoms, including pain, *unless medical signs or findings show* that there is a medical condition that could be reasonably expected to produce those symptoms." 20 C.F.R. §§ 404.1529 and 416.929 (1989) (emphasis added).

Therefore, instead of relying on *Cotton*, we adhere to the standard articulated in *Nyman, Taylor,* and *Miller,* and the pre-amendment opinion in *Gonzalez,* all of which faithfully follow the language of the Secretary's regulation. Specifically, an ALJ may disregard a claimant's subjective pain testimony unless it is accompanied by evidence of "a medical condition that could be reasonably be expected to produce" that pain. 20 C.F.R. §§ 404.1529 and 416.929 (1989); *Nyman,* 779 F.2d at 531; *Miller,* 770 F.2d at 849; *Taylor,* 765 F.2d at 876; *Gonzalez,* 631 F.2d at 145–46. The ALJ, of course, is required to make specific findings to that effect. *Murray,* 722 F.2d at 502; *Miller,* 770 F.2d at 848–49. That was done here.

It may be that we might believe Bates should have some type of relief—but granting it is not our delegated responsibility. The statute and regulations determine what "disability" is for purposes of the statutory and regulatory schemes. Our responsibility is to follow the statute and determine whether there is substantial evidence in the record as a whole to affirm the Secretary's decision. We hold that there is.