Tonya S. HAMILTON, Plaintiff,

v.

Shirley S. CHATER,[1] Commissioner, Social Security Administration, Defendant.

Civil No. 95–6430–FR.

United States District Court, D. Oregon.

Oct. 8, 1996.

---

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464 (1994), the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995. In accordance with section 206(d) of Pub.L. No. 103–296, Shirley S. Chater, Commissioner of the Social Security Administration, should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. No further action need be taken to continue this suit. *Id.*

Ralph Wilborn and Tim Wilborn, Ralph Wilborn and Etta L. Wilborn, P.C., Eugene, Oregon, for Plaintiff.

Kristine Olson, United States Attorney, Craig J. Casey, Assistant United States Attorney, Portland, Oregon, and Richard H. Wetmore, Special Assistant United States Attorney, Social Security Administration, Seattle, Washington, for Defendant.

## OPINION

FRYE, District Judge:

The plaintiff, Tonya S. Hamilton, brings this action pursuant to Section 205(g) of the

Social Security Act (the Act), as amended, 42 U.S.C. § 405(g), to obtain judicial review of the decision of Shirley S. Chater, Commissioner, Social Security Administration, denying her application for Supplemental Security Income Disability Benefits.

## BACKGROUND

Tonya Hamilton filed an application for a period of disability on March 18, 1994, alleging that the date of the onset of her disability was September 1, 1993. The application was denied initially and upon reconsideration. After a timely request for a hearing, Hamilton, represented by counsel, appeared and testified before an Administrative Law Judge (ALJ) on December 8, 1994. The hearing was reconvened on April 19, 1995 to allow the ALJ to review a neurological report and to hear testimony from a vocational expert.

On April 25, 1995, the ALJ issued a decision finding that Hamilton was not disabled within the meaning of the Act. The decision of the ALJ became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## FACTS

Tonya Hamilton was twenty-six years old at the time of the hearing. She has a high school education and prior work experience as a dishwasher, industrial cleaner, and ticket sales person. Hamilton alleges that she is disabled because she is infected with the Human Immunodeficiency Virus (HIV infection), and that as a result she suffers from depression, headaches, and extreme fatigue. She also suffers from bilateral carpal tunnel syndrome.

On March 29, 1994, Hamilton's treating physician, Dr. Lee Vance, completed a form on which he indicated that Hamilton has HIV infection with **"HERPES SIMPLEX VIRUS** causing mucocutaneous infection (e.g., oral, genital, perianal) lasting for 1 month or longer." T–169 (emphasis in original). Dr. Vance further indicated that Hamilton had "[m]arked restriction of **ACTIVITIES OF DAILY LIVING"** and "[m]arked difficulties in completing tasks in a timely manner due to deficiencies in **CONCENTRATION, PERSISTENCE, OR PACE."** T–171 (emphasis

in original). In a narrative completed on that same date, March 29, 1994, Dr. Vance stated that "[t]his patient's own disease has been complicated by recurrent episodes of herpes simplex, the genital form, which tends to persist for relatively long periods of time when it flares up." T–283.

On July 5, 1994, Dr. Saeed Aflatooni made a psychodiagnostic evaluation of Hamilton. Dr. Aflatooni noted:

> Her present physical complaints include fatigue, headaches, and Carpal Tunnel Syndrome as well as concern about her health and well being and the future. She has not developed the symptomatology or complications of AIDS at this time. The patient's "exfiance" who contaminated her with the AIDS virus died three years ago of complications of AIDS. The claimant, at this time, appears to be fairly functional, primarily taking care of her children. She finds herself to be unable to work at this time. She remains to be in need of assistance.

T–280. Dr. Aflatooni concluded that "[s]he is unable to work at this time for obvious reasons." T–281.

On September 1, 1994, Hamilton was examined by Dr. Julee Richards for a rash on her hands. Dr. Richards diagnosed Hamilton's condition as atopic dermatitis/eczema and secondary syphilis. On September 21, 1994, Dr. Richards reported that the rash had resolved.

On November 4, 1994, Dr. Vance, Hamilton's treating physician, wrote to legal counsel for Hamilton, stating, in part, as follows:

> Ms. Hamilton ... was diagnosed as seropositive for HIV infection around January, 1992....

> Ms. Hamilton's own disease has been complicated by recurrent episodes of herpes simplex infection of the genital tract, which tends, according to the patient's history, to persist for relatively long periods of time when it flares up. However, we do not specifically have documentation for such a flare up here in office records. Normally, a persistent herpes infection is regarded as unusual if it lasts longer than a month or

involves infection at a site other than skin or mucus membranes, such as, bronchitis, pneumonitis, esophagitis, encephalitis or disseminated infection. We have no record in our office records that this patient has experienced any of these disseminated infections. Furthermore, the documentation of the patient's infection with HIV was obtained through another source. Therefore, we lack primary evidence of the HIV infection. We have not repeated the HIV serology tests as this might represent unnecessary duplication, given truthful history.

The patient's T helper/inducer (CD4) count is 1,057 which is in the normal range. According to the "Listings of Impairments", of which you sent us copies with your letter, the necessary documentation of HIV infection requires a repeat HIV analysis, which we have not yet performed. Therefore, I can't really confirm to you that this patient actually has HIV infection. We have merely accepted her history that she is so.

We have not treated the patient for her recurrent herpes, nor have we investigated those lesions as she was asymptomatic for the period of time we have known her since March 29, 1994. Therefore, I cannot confirm recurrent herpes simplex viral infection of the genital area.

Also, based upon the "Listings of Impairments" enclosed with your letter, it states that no definitive laboratory evidence is required if the HIV infection may be documented by the medical history, clinical and laboratory findings in the diagnosis indicated in the medical evidence. Since we haven't seen any evidence of any unusual illness and her CD4 count is normal, in my view this does not meet the criteria indicated in the "Listings of Impairments". The patient has not been subsequently shown to have any opportunistic disease predictive of a defect in cell-mediated immunity which would otherwise define an immunocompromised state, per se.

I don't doubt that the patient is HIV positive, or occasionally does have prolonged cases of herpes simplex, based upon her history, but so far I can't confirm it because I haven't seen her have a case while she has been followed by our clinic. T–308–309.

On December 8, 1994, the first hearing was held before the ALJ, at which time Hamilton testified that she had been found HIV positive in 1991 or 1992 and had become depressed after receiving this diagnosis. Hamilton testified that she has not sought medical treatment as often as she would like because with three small children it is difficult to go to a doctor, and because the medical card provided by the State of Oregon does not cover treatment for some of her problems, such as temporal mandibular jaw syndrome. Hamilton testified that she has headaches every day, and that during the day she watches television and talks on the citizen's band radio. Hamilton testified: "I can't exercise, I can't really do much of nothing. I'm just tired most of the time." T–67. Hamilton further testified:

> I have good days, and I have bad days. There's good days when I feel great, I feel like there's nothing wrong with me. Then there's just days, which is most of the time, where I just want to lay around, I don't want to do nothing. I make myself get up to take care of my children because I have to. If I had somebody there to take care of them I wouldn't, I would lay on the couch at times, and just not do nothing.

T–86.

Hamilton testified that when her herpes is in an active phase it lasts a long time, and she is in severe pain. T–84.

At the hearing before the ALJ, a medical expert, Dr. Prasanna Pati, testified that he agreed with Dr. Aflatooni's report that Hamilton suffered from an adjustment disorder with mixed emotional features. However, Dr. Pati concluded that from a psychological standpoint, there were no significant limitations that would affect Hamilton's ability to work. T–74.

On January 10, 1995, Hamilton was given a neurological examination by Dr. Robert Tearse. Dr. Tearse noted that Hamilton was not malingering. He confirmed moderate carpal tunnel syndrome, recurrent low back

pain, and temporal mandibular jaw syndrome.

On April 19, 1995, a second hearing was held by the ALJ to consider the examination of Dr. Tearse. Hamilton testified that, on a good day, she can sustain activity for an hour and a half, but then has to rest the rest of the day. T–105.

Also at the second hearing, a vocational expert testified. The ALJ posed the following hypothetical:

[L]ifting and carrying would be restricted to the 25 pound range. [No] restrictions on standing, walking, or sitting. There are some limitations in stooping, crouching, and crawling, which [Dr. Tearse] indicates could be performed occasionally, and he indicates that there's no restriction on reaching, but handling would be restricted, as well as feeling, pushing, and pulling. . . . So I want you to avoid considering occupations that would involve repetitive, or continuous activities of the hands involving gripping, or flexion.

T–112–113.

The opinion of the vocational expert was that Hamilton could not perform her past work, but that she could perform the duties of an office helper, or an information clerk, or a parking lot attendant. T–113–114.

On April 25, 1995, the ALJ issued a decision, finding that:

1. The claimant has not engaged in substantial gainful [activity] during the relevant period at issue.

2. The medical evidence establishes that the claimant has severe bilateral carpal tunnel syndrome and headaches related to a temporal mandibular joint disorder, and that she is also HIV positive, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's testimony regarding her pain and other limitations is credible only to the extent consistent with the residual functional capacity conclusion set forth in the narrative portion of this decision.

4. The claimant has the residual functional capacity to perform a reduced range of light work as described by Dr. Tearse in the narrative portion of this decision (20 CFR 416.945).

5. The claimant is unable to perform her past relevant work.

6. The claimant's residual functional capacity for the full range of light work is reduced by the limitations cited by Dr. Tearse in the narrative portion of this decision.

7. The claimant is 26 years old, which is defined as a younger individual (20 CFR 416.963).

8. The claimant has a high school education (20 CFR 416.964).

9. The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work (20 CFR 416.968).

10. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 202.20, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct the conclusion of "not disabled."

11. Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform. Examples of such jobs are: a general office helper, information clerk, and parking lot attendant. There are between 74,000 and 1,500,-000 such jobs in the national economy.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

T–27–28.

On May 30, 1995, in support of her request for review by the Appeals Council, Hamilton

submitted a report, a Physician's Assessment of Physical Capacities, prepared by Dr. Julee Richards, who notes that in an eight-hour work day, Hamilton is able to sit for four hours, is able to stand for less than one hour, is able to walk for twenty minutes, and must lie down for four hours.

## CONTENTIONS OF THE PARTIES

Hamilton contends that 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ improperly rejected the opinion of Dr. Vance that her condition satisfies the requirements of Listing 114.08; 3) the ALJ improperly rejected the opinion of Dr. Aflatooni that Hamilton is unable to work; 4) the ALJ improperly rejected Hamilton's testimony regarding the severity of her herpes simplex outbreaks and their frequency and her fatigue; 5) the ALJ failed to consider the combination of her impairments; 6) the ALJ erred by relying on vocational testimony which was based on an improper vocational hypothetical question; and 7) the Commissioner gave no reason for rejecting the opinion of Dr. Richards.

The Commissioner contends that 1) there is no medical evidence, apart from Hamilton's undocumented subjective complaints, that would satisfy the listing requirements; 2) Dr. Vance has stated that Hamilton does not meet the listing requirements; 3) the ALJ properly rejected the opinion of Dr. Aflatooni because the medical expert, Dr. Pati, who agreed with Dr. Aflatooni that Hamilton suffered from an adjustment disorder, concluded that Hamilton was not disabled; 4) the ALJ properly set forth the reasons for finding that Hamilton's testimony lacked credibility; 5) the hypothetical presented to the vocational expert by the ALJ was proper; and 6) the Appeals Council correctly concluded that Dr. Richard's assessment of Hamilton's physical capacities did not provide a basis for changing the ALJ's decision. The Commissioner concludes that there is substantial evidence in the record to support the decision of the Commissioner; that the Commissioner applied the proper standards for the evaluation of evidence; and that the decision of the Commissioner should be affirmed.

## STANDARD OF REVIEW

The burden of proof rests upon the claimant to establish entitlement to disability benefits. To meet this burden, the claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to ... last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his or her impairments are of such severity that the claimant is not only unable to do his or her previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful work which exists in the national economy. *Terry v. Sullivan,* 903 F.2d 1273, 1275 (9th Cir.1990).

The Commissioner has established a five-step sequential process for evaluating and determining whether a person is disabled under the Act. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant has engaged in substantial gainful activity after the onset of the alleged disability.

The second step is to determine whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If a claimant has a severe impairment or combination of impairments, then under step three of the evaluation process, the ALJ must determine whether the impairment or impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).

If a claimant does not have an impairment that meets or equals an impairment listed under Appendix 1, then step four of the evaluation process requires the ALJ to assess the claimant's residual functional capaci-

ty to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant can perform his or her past relevant work, then the ALJ must find the claimant "not disabled." If the claimant cannot perform his or her past relevant work, the ALJ must proceed to the fifth step and determine whether the claimant can, nonetheless, perform work in the regional economy, in the national economy, or both.

■ The findings of the Commissioner are conclusive [42 U.S.C. § 405(g) ], and the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or it is based on legal error. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016 (9th Cir.1992). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971), but is "less than a preponderance," *Sorenson v. Weinberger,* 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). *Desrosiers v. Secretary of Health and Human Servs.,* 846 F.2d 573, 576 (9th Cir.1988).

■ In evaluating the evidence, this court looks at the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Gonzalez v. Sullivan,* 914 F.2d 1197, 1200 (9th Cir.1990). The trier of fact, and not this reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, this court may not substitute its judgment for that of the ALJ. *Richardson,* 402 U.S. at 400, 91 S.Ct. at 1426–27; *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984).

## ANALYSIS

### 1. *The Development of the Record*

■ Hamilton first argues that the ALJ failed to obtain all of the tests that indicate she has HIV infection in violation of the duty of the ALJ to fully and fairly develop the record. However, the ALJ found that Hamilton is HIV positive. The record has been fully developed on the issue of whether Hamilton is HIV positive. This court finds that Hamilton is HIV positive.

### 2. *The Opinion of Dr. Vance*

■ Hamilton contends that the ALJ erred in relying upon the opinion of Dr. Vance that the medical documentation before the ALJ does not satisfy the requirements of Listing 114.08. Hamilton argues that since her "failure to satisfy the Listing requirements is based solely on a technicality (no testing was done to confirm the diagnosis, and, in violation of his regulatory duty, the ALJ did not attempt to obtain testing), remand for payment of benefits is appropriate." Plaintiff's Memorandum in Support of Petition for Judicial Review, p. 12.

The Commissioner contends that while the ALJ accepted the fact that Hamilton is HIV positive, there is no medical evidence that Hamilton has suffered from herpes simplex virus infection for one month or longer.

If a claimant satisfies the requirements of any listed impairment, the claimant is presumptively disabled. 20 C.F.R. § 416.920(d). 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 114.08(D)(2)(a) includes a person who is infected with the HIV virus *and* the herpes simplex virus causing mucocutaneous infection (e.g., oral, genital, perianal) lasting for one month or longer. This listing requires a finding that the claimant is HIV positive *and* a finding that the herpes simplex virus is causing mucocutaneous infection (e.g., oral, genital, perianal) which has lasted for one month or longer. Dr. Vance wrote a report on March 29, 1994, stating that

> The patient has not been subsequently shown to have any opportunistic disease predictive of a defect in cell-mediated immunity which would otherwise define an immunocompromised state, per se.

> I don't doubt that the patient is HIV positive, or occasionally does have prolonged cases of herpes simplex, based upon her history, but so far I can't confirm it because I haven't seen her have a case while she has been followed by our clinic.

T–309.

The ALJ did not conclude from Dr. Vance's report that Hamilton was not HIV positive. The ALJ concluded that there was no medical documentation that the fact that

Hamilton was HIV positive caused the herpes condition. This was a reasonable conclusion based on Dr. Vance's report. However, Dr. Vance states in his report that he "[does not] doubt that [Hamilton] is HIV positive, or occasionally does have prolonged cases of herpes simplex, based upon her history." T–309. The combination of being HIV positive and having prolonged cases of herpes simplex would result in presumptive disability under Listing 114.08.

### 3. The Opinion of Dr. Aflatooni

■ On July 5, 1994, Dr. Aflatooni made a report of his psychodiagnostic evaluation of Hamilton. Dr. Aflatooni noted:

> Her present physical complaints include fatigue, headaches, and Carpal Tunnel Syndrome as well as concern about her health and well being and the future. She has not developed the symptomatology or complications of AIDS at this time. The patient's "exfiance" who contaminated her with the AIDS virus died three years ago of complications of AIDS. The claimant, at this time, appears to be fairly functional, primarily taking care of her children. She finds herself to be unable to work at this time. She remains to be in need of assistance.

T–280. Dr. Aflatooni concluded that "[s]he is unable to work at this time for obvious reasons." T–281.

> The ALJ stated:
>
> Dr. Aflatooni assessed adjustment disorder with mixed emotional features. While he rated the claimant's global assessment of functioning at 50 and stated that the claimant was unable to work, his opinion appears to be based on the claimant's subjective complaints regarding her physical impairments, and as discussed later in this decision, the claimant's subjective complaints are not entirely credible. Moreover, as noted above, Dr. Aflatooni's mental status examination of the claimant disclosed no significant psychological impairments or limitations.
>
> The medical expert at the hearing opined that based upon his review of the evidence, the claimant exhibited an affective disorder which imposed slight limitations in the

claimant's activities of daily living and maintaining social functioning. He added that she seldom had deficiencies of concentration, persistence, or pace, and had never exhibited any episodes of deterioration or decompensation in work or work-like settings. He advised that the claimant did not have any psychological impairments which would prevent her from performing substantial gainful activity. The testimony of the medical expert is accepted and relied upon herein as it is supported by the objective medical evidence of record.

> Thus, the evidence establishes that the claimant's mental impairment does not more than minimally hamper her ability to engage in basic work activities. Accordingly, she does not have "severe" mental impairment. In addition, it is concluded that Dr. Aflatooni's opinion is not consistent with the other medical evidence of record and is not persuasive in demonstrating that the claimant is incapable of performing any work.

T–21–22.

Hamilton argues that the ALJ failed to state clear and convincing reasons for discounting the opinion of Dr. Aflatooni that Hamilton "is unable to work at this time for obvious reasons." T–281. In the alternative, Hamilton contends that, at the least, the ALJ had a duty to recontact Dr. Aflatooni and ascertain the factual basis for his opinion that she is unable to work.

The Commissioner argues that the ALJ properly rejected the opinion of Dr. Aflatooni because the testimony of the medical expert, Dr. Pati, is supported by and consistent with other evidence in the record.

This court finds that the ALJ has set forth legitimate reasons based upon substantial evidence in the record for rejecting the opinion of Dr. Aflatooni that Hamilton cannot work. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.1995). The ALJ relied upon the opinion of the medical expert, as well as the fact that Dr. Aflatooni's opinion was not consistent with other medical evidence in the record and was based primarily upon Hamilton's subjective complaints about her physical impairments.

### 4. *The Testimony of Hamilton*

■ Hamilton contends that the ALJ improperly rejected her testimony regarding the severity and frequency of the outbreaks of herpes simplex and her fatigue.

The Commissioner contends that the ALJ stated legitimate reasons for finding Hamilton's testimony not credible.

The ALJ stated:

In arriving at the residual functional capacity assessment set forth, the undersigned has carefully considered the claimant's description of her pain and other limitations. However, the claimant's allegations of a more profound and disabling level of symptomalogy and dysfunction are not credible. They are inconsistent with her minimal treatment regimen, they are contradicted by her activities of daily living, and they are not reasonably supported by objectively-determined medical diagnoses even when consideration is given to the idiosyncratic nature of pain (SSR 88–13).

The evidence of record shows that the claimant has been treated mainly with medications and has not required emergency room intervention or hospitalization specifically for the management of pain-related symptoms. She has not been treated with inordinate amounts of prescription pain medication, has not been treated intensively with conservative modalities, and has not attended any pain clinics. Indeed, the claimant's complaints have been treated in a conservative manner and extensive medical management of the claimant's symptoms has not been undertaken.

. . . .

With regard to the claimant's activities of daily living, the record demonstrates that the claimant's impairments do not profoundly limit her in this area of functioning. In testimony and in her reports to the agency, the claimant indicated that she is able to cook, clean, and drive an automobile without difficulties. She has others do her grocery shopping, but is able to take care of her personal needs and financial responsibilities without assistance. She visits with friends and relatives and described her recreational activities as watching television and listening to the radio. She has three children, including an infant, that she is able to take care of despite her impairments (Exhibits 9, 10, and 17). In contrast to this report, the claimant testified that she is so fatigued that she is essentially non-functional for more than one hour per day.

In addition to her minimal treatment regimen and her activities of daily living, the objective medical record does not reasonably establish a greater level of dysfunction than that assessed herein. While the claimant has bilateral carpal tunnel syndrome, the claimant has not undergone any surgery nor has any medical source opined that this impairment precludes gainful work (Exhibit 24).

. . . .

Although the claimant has been diagnosed as being HIV positive, the record reflects that the claimant has a normal CD4 count and has been essentially asymptomatic since being diagnosed with this condition (Exhibits 8 and 21). The claimant has also complained of having herpes simplex which affects her ability to engage in prolonged sitting due to pain. However, Dr. Vance stated in November 1994 that while the claimant's HIV condition per her report had been complicated by recurrent episodes of herpes simplex, his office did not specifically have documentation for such flare-ups as described by the claimant. The claimant apparently alleged that such episodes occurred for relatively long-periods. He stated that normally, a persistent herpes infection is regarded as unusual if it lasts longer than a month or involves infection at a site other than skin or mucus membranes. He added that they had no record in their office records which documented that the claimant had experienced any of these disseminated infections. He advised that they had not treated the claimant for recurrent herpes and therefore, could not confirm a recurrent herpes simplex viral infection (Exhibit 23). It should be noted that Dr. Vance treated the claimant from March 29, 1994, through at least November 4, 1994 (Exhibits 16 and

23). Through this period there was no evidence of herpes simplex outbreak. There is no subsequent medical treatment other than the consultative examination by Dr. Tearse on January 10, 1995. While this was a neurological examination, the claimant did not report in her history that she had had any recurrence of her herpes simplex condition (Exhibit 24). Thus, there is evidence that for almost a year there has been no exacerbations or treatment.

. . . .

In conclusion, no examining or treating source opined that the claimant's impairments precluded her from engaging in substantial gainful activity, nor did they impose any greater limitations than those assessed herein. While the claimant alleges extreme fatigue and testified that she is only active one hour a day, no examining or treating source has advised a need or recommendation for such recombinant rest. There is no reason for such extreme fatigue symptoms except for the claimant's lifestyle. The medical evidence establishes that the claimant is capable of performing a reduced range of light exertional level work as described above. The claimant's description of her pain and other limitations is found to be credible only to the extent that it is consistent with the residual functional capacity assessment set forth herein.

T–23–26.

In *Smolen v. Chater,* 80 F.3d 1273 (9th Cir.1996), the court stated:

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms. . . . If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

. . . .

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged....' " The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. . . .

. . . .

Once a claimant meets the *Cotton* test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so. . . .

To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id.* at 1281–84 (emphasis in original) (citations and footnotes omitted).

Hamilton contends that the ALJ's rejection of her testimony of disabling fatigue is in direct contravention of the precedent set out in *Smolen* because the record is uncontradicted that her medical impairments can reasonably be expected to cause fatigue. Hamilton contends that the medical advisor, upon which the ALJ relied, testified that "fatigue is a fairly common symptom of depression" (T–77), and that Hamilton's fatigue could be related to her HIV infection.

The Commissioner contends that Hamilton has failed to meet the first portion of the test set forth in *Cotton v. Bowen,* 799 F.2d 1403 (9th Cir.1986), because she has not come forth with any objective medical evidence to show that she has suffered from outbreaks of the herpes virus.

Under the *Cotton* test (1) Hamilton must produce objective medical evidence of an impairment or impairments; and (2) Hamilton must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptoms. Here, there is medical evidence that Hamilton is infected with the HIV virus; that she is depressed; and that she has suffered from outbreaks of the herpes virus. These impairments could reasonably be expected to produce fatigue. The ALJ was required to make specific findings stating clear and convincing reasons for rejecting the testimony of Hamilton as to fatigue. *See Smolen,* 80 F.3d at 1281.

The ALJ stated as to Hamilton:

[T]he claimant's allegations of a more profound and disabling level of symptomalogy and dysfunction are not credible. They are inconsistent with her minimal treatment regimen, they are contradicted by her activities of daily living, and they are not reasonably supported by objectively-determined medical diagnoses even when consideration is given to the idiosyncratic nature of pain.

T–23. There is no evidence in the record to support the conclusion of the ALJ that Hamilton's testimony is "contradicted by her activities of daily living." T–23. Hamilton's reported activities of daily living are minimal and consistent with her reported fatigue. The ALJ's report of a minimal treatment regimen can be explained to some extent by the fact that Hamilton has no insurance coverage, and the reference to an "objectively-determined medical diagnoses" (T–23) does not provide a clear and convincing reason to reject Hamilton's testimony in that the record establishes depression and HIV infection which could reasonably be expected to produce fatigue. The ALJ has not provided clear and convincing reasons to reject Hamilton's testimony of fatigue in light of the record.

## CONCLUSION

In conclusion, there is substantial evidence in this record to support Hamilton's testimony of depression and severe fatigue. These impairments should have been included in the ALJ's analysis of Hamilton's residual functional capacity. There is not substantial evidence in this record to support the conclusion of the ALJ that Hamilton has the residual functional capacity to perform a reduced range of light work. The record in this case demonstrates that Hamilton is not able to engage in any substantial gainful activity by reason of her physical impairments.

The decision of the Commissioner is reversed, and this case is remanded to the Commissioner for an award of benefits.