46 F.3d 1139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Wilma P. BURCH, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-16667.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Feb. 10, 1994.
Decided: Jan. 5, 1995.
 
 Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Wilma P. Burch appeals the district court's summary judgment upholding the Secretary of Health and Human Services' (Secretary) decision denying her disability insurance benefits under Title II of the Social Security Act. Burch contends the district court erred by finding that substantial evidence supported the Secretary's decision. We affirm.
 
 
 3
 * Burch was born on December 18, 1930. She has the equivalent of a high school education, earned in her native Czechoslovakia. She has worked as a waitress, store clerk, nurse's assistant, respiratory technician, and assistant manager of a fast food restaurant. She injured her neck on June 16, 1986 while working as a respiratory technician. She continued working until December 31, 1986.
 
 
 4
 Burch received treatment for her on-the-job injury beginning in June 1986. At that time, she had already been receiving treatment for strains in her neck and spine, including injections, muscle relaxant medication, and physical therapy. The treating physician, Andre C. Matthews, M.D., recommended continuing medication and physical therapy. Burch received physical therapy at least through December 1986. Dr. Matthews recommended a pain control program, but the industrial insurance carrier would not cover the cost of the program. Burch testified that she had no private insurance which would cover the cost of such treatment.
 
 
 5
 Besides the neck problem, Burch was diagnosed with carpal tunnel syndrome in both hands and wrists. She had surgery to correct this in her right wrist. There is mild to moderate L4-5 disk bulging and L3-S1 disk bulging.
 
 
 6
 Burch describes her condition as being unable to stand more than twenty minutes, being unable to walk more than short distances, and having difficulty bending, reaching or lifting. She states that she is able to drive a car short distances, and do light housekeeping. She reports difficulty grasping, and hence difficulty dressing, grooming, and washing herself.
 
 
 7
 During the process of applying for worker's compensation and disability benefits, Burch was examined by David J. Cheshire, M.D. on September 9, 1987. Dr. Cheshire found that:
 
 
 8
 this lady is, or was, demonstrating evidence of some chronic neck and back pain, doubtless associated with a degree of degenerative disk disease at both levels but, as is recorded, it was my opinion that "objective evidence is low -- subjective complaints are very high."
 
 
 9
 Dr. Cheshire examined Burch again on May 12, 1988. Cheshire opined that:
 
 
 10
 A physical examination performed on this day was essentially indistinguishable from that which had been performed in September of 1987 and it remains my opinion that this lady has moderate degenerative disk disease of the cervical and lumbar spines but that her predominant presentation is functional rather than organic.
 
 
 11
 In a question of evaluation of this lady for Social Security disability benefits, it would be my opinion that her qualification or disqualification should essentially be on psychiatric rather than orthopedic criteria.
 
 
 12
 Lloyd K. Bentley, M.D. evaluated Burch on July 8, 1988. Dr. Bentley reported that while Burch told him that her husband dropped her off because she could not drive, he saw her drive away by herself after the appointment. He also reported that "she seems to be somewhat deteriorating due to her chronic pain and is exhibiting some depressive traits due to the situation." Dr. Bentley concluded as follows:
 
 
 13
 Diagnostically I see her as suffering from a mixed personality disorder. I see histrionic, narcissistic and compulsive traits. I also look on an Axis I as a psychogenic pain disorder.
 
 
 14
 Burch presented evidence that she suffered mental impairments. The record contains some evidence of affective disorders (depression) and somatoform disorders (psychogenic pain disorder), in a January 28, 1989 report of Francis A. Enos, Ph.D.
 
 
 15
 Burch's application for disability benefits was denied. She sought administrative review. The ALJ concluded that Burch had sufficient residual functional capacity to perform medium work, i.e., lift up to 50 pounds occasionally and 25 pounds frequently and stand and walk 6-8 hours per day, and could perform "past relevant work." See 20 CFR Sec. 404.1520. After further administrative appeals, the ALJ's decision became the final decision of the Secretary.
 
 II
 
 16
 We review de novo the district court's grant of summary judgment. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). We review the entire administrative record to determine whether the Secretary's finding that Burch could perform medium work and past relevant light work was based upon substantial evidence and proper legal standards. See id. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).
 
 III
 
 17
 Reviewing the medical evidence, the ALJ found that "[a] preponderance of the credible evidence demonstrates that claimant has not been prevented from performing her past relevant work for the requisite period of 12 continuous months. She is, therefore, not disabled within the meaning of the Act." The ALJ relied heavily upon the opinion of Dr. Cheshire, finding that "no physician who examined or treated claimant rendered findings undermining the opinion of the Dr. Cheshire." Relying on the fact that repeated computerized tomography (CT) scans showed at most moderate disk bulging, the ALJ concluded that Cheshire's opinion was "highly persuasive," and "should be accorded controlling weight."
 
 
 18
 The ALJ's reliance of the opinion of a non-treating physician, Cheshire, as controlling must be examined closely:
 
 
 19
 If the ALJ chooses to disregard a treating physician's medical opinion, he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.
 
 
 20
 Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). In this case, the ALJ explained that because Cheshire's diagnosis was supported by the evidence from the examinations by the other physicians, and was not contradicted, he found it reliable. Thus, he claimed not to disregard the opinion of Burch's treating physician, Dr. Matthews. As Burch argues, however, Dr. Matthews did diagnose carpal tunnel syndrome in her left hand, and there was also evidence in the record of arthritis in her fingers and shoulders. The ALJ made no attempt to address this medical evidence. This omission was not significant, however, because there was no indication in the record that these minor problems created significant physical impairment.
 
 
 21
 No doctor has ever stated that Burch is limited in her ability to work. While Burch herself testified to her physical limitations, Dr. Cheshire found that her qualification for benefits could only be on psychiatric grounds. Reading the record as a whole, a reasonable mind can accept the conclusions of the ALJ that Burch is not significantly physically disabled, and is capable physically of performing light work.
 
 IV
 
 22
 While there was not substantial evidence to support Burch's claim of physical disability, the ALJ also had to examine her claims of chronic pain in excess of what the medical evidence explained.
 
 
 23
 The ALJ is not required to believe pain testimony and may disregard it if there are no objective medical findings which "could reasonably be expected to cause some pain." If he rejects it, however, he must justify his decision with specific findings.
 
 
 24
 ....
 
 
 25
 If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be "clear and convincing," and supported by specific findings.
 
 
 26
 Dodrill v. Shalala, 12 F.3d 915, 917-18 (9th Cir. 1993) (citations omitted). In this case, there is medical evidence providing a basis for some pain. As the ALJ noted, CT scans have shown mild to moderate disc bulging. The ALJ was thus required to make specific findings regarding the lack of credibility of the subjective reports of pain. The ALJ has done so.
 
 
 27
 The ALJ made five findings in support of his conclusion that Burch is not disabled by chronic pain. First, the ALJ noted that at least twice, Dr. Matthews recommended that Burch participate in pain control programs, and she did not follow through. While this is correct, the ALJ neither discussed evidence in the record that Burch's insurer refused to pay for such a program, nor discussed her testimony that lack of money caused her refusal. Thus, this is not a clear and convincing reason for rejecting her pain testimony.
 
 
 28
 Second, the ALJ concluded that Burch testified to a level of daily activities inconsistent with debilitating pain. Burch does not dispute the description of her activities as cooking, housework, writing letters, and caring for eleven dogs, eight cats, and her aged mother. This finding is clear and convincing evidence supporting the ALJ's conclusion.
 
 
 29
 Third, the ALJ noted that while Burch claimed constant pain, she reported to Dr. Bentley in July 1988 that she took only Motrin. Burch points to evidence that she previously took stronger pain medication, but the record also reflects that she often discontinued such medication, complaining of stomach problems. The ALJ also concluded that Burch's twenty pound weight gain since her onset of disability was evidence that her reports of subjective pain should be discounted. This conclusion is difficult to understand. If Burch was forced into inactivity by pain, it is easy to see how she might have gained weight. An increase in physical fitness might have tended to discredit her claims of constant pain. More credible is the ALJ's finding that Burch's decision to have a face lift in April 1988, a procedure which must have resulted in some pain and discomfort, indicates that her suffering from other sources was not as intense as she reported.
 
 
 30
 Fourth, the ALJ noted that Burch attended physical therapy only briefly, and did not follow through on a recommendation for further treatment. Burch was in physical therapy from at least January 1986 through August 1986, according to the reports of Dr. Matthews. The record discloses a December 30, 1986 letter from a physical therapist stating that Burch has been receiving physical theory two to three times a week since her last visit to Dr. Matthews. An undated letter from the same therapist attests that Burch received ten to twelve physical therapy treatments per month since January 1986. Dr. Matthews' notes suggest that he renewed physical therapy in June 1987, and offered to renew it in July 1987. Therefore, the ALJ's finding regarding lack of physical therapy does not constitute a clear and convincing reason to deny benefits.
 
 
 31
 Finally, the ALJ notes that Dr. Bentley reported that Burch lied to him about her ability to drive. She told him her husband dropped her off at the office because she could not drive. Dr. Bentley, however, saw her get into a car after the appointment and drive off by herself. This is clear and convincing evidence that Burch's descriptions of her disabilities were exaggerated.
 
 
 32
 Contrary to the assertion in Burch's brief, the ALJ did not find that she suffered no pain despite detracting evidence. The ALJ found that Burch was greatly exaggerating the pain she suffered, based on specific findings, and thus refused to consider her reported chronic pain as a substantial physical impairment. The ALJ concluded that she has the residual functional capacity to perform past relevant work.
 
 
 33
 While not all of the Secretary's findings are clear and convincing, cumulatively they do meet the Dodrill standard. Upon review of the record as a whole, we hold that the ALJ's refusal to credit Burch's testimony of excess pain was supported by clear and convincing evidence.
 
 V
 
 34
 Burch contends there was uncontradicted evidence that she suffers a significant mental impairment. She argues that Dr. Bentley's diagnosis that she suffered a somatoform pain disorder was improperly ignored by the ALJ. The ALJ did note this diagnosis in his written decision. Furthermore, the ALJ did not discuss Dr. Enos' evaluation also detailing such a disorder at all in his decision, but relied heavily on the report by Dr.Bentley.
 
 
 35
 Pursuant to 20 CFR Sec. 404.1520a(d)(2), the ALJ attached a psychiatric review technique form to his decision. On this form, the ALJ indicated that personality disorders were present, but that affective disorders and somatoform disorders were absent. The decision does not reflect why the ALJ indicated on the form that no affective or somatoform disorders were present. The form, however, contradicts the text of the decision, in which the ALJ indicated that there "is an anti-social personality disorder" and a psychogenic pain disorder. Therefore, substantial evidence does not exist to support the ALJ's findings that Burch did not suffer from depression or psychogenic pain disorder.
 
 
 36
 The failure of the ALJ to make specific findings regarding his conclusion that Burch suffered neither affective nor somatoform disorders, and his disregard of Dr. Enos' diagnosis does not require a remand if there is substantial evidence in the record that the disorders identified by Drs. Enos and Bentley were insufficient to destroy Burch's residual functional capacity. See, e.g., Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (ALJ's alleged error harmless where it was immaterial to the outcome).
 
 
 37
 Although the Secretary did not articulate her reasoning process with respect to the diagnoses of depression and psychogenic pain disorder, there is no evidence to support a finding that these disorders were disabling. None of the physicians examining Burch suggested that she was unable to work because of a mental impairment. Dr. Bentley specifically found that, despite his diagnosis of psychogenic pain disorder, Burch was "oriented to person, place and time," "her attention span was ... adequate," there was "no distortion in her thought processes," she had "fairly good" retention and recall and memory of both recent and remote events, and her "[j]udgment is good." Thus, the Secretary's finding that Burch lacked any mental impairment which would prevent her from performing past relevant work was supported by substantial evidence. The district court properly granted summary judgment in favor of the Secretary.
 
 
 38
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3